**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MARK M. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13-022-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Mark King ("King") seeks judicial review of the Commissioner of Social Security's denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq*.  The Administrative Law Judge ("ALJ") found King suffered from a severe impairment but his allegations of disabling symptoms were not fully credible.  The ALJ determined King retained the residual functional capacity ("RFC") to perform light work with certain nonexertional limitations, thus he was not disabled as defined in the Act.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

### Factual and Procedural Background

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed his application for disability insurance benefits on March 31, 2009, alleging a disability onset date of October 23, 2008.  The Commissioner denied Plaintiff's application at the initial claim level, and Plaintiff appealed the denial to an ALJ.  The ALJ held a hearing and

on August 25, 2011, issued his decision holding Plaintiff was not disabled. The Appeals Council

denied Plaintiff's request for review on November 15, 2012, leaving the ALJ's decision as the

Commissioner's final decision. Plaintiff has exhausted all of his administrative remedies and

judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny

disability benefits is limited to determining whether the Commissioner's findings are supported

by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir.

2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable

mind would find it sufficient to support the Commissioner's decision. *Id.* In making this

assessment, the court considers evidence that detracts from the Commissioner's decision, as well

as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court

must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d

734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls

outside of the available "zone of choice," and a decision is not outside this zone simply because

the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646

F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial

gainful activity by reason of a medically determinable impairment that has lasted or can be

expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the

Commissioner follows a five-step sequential evaluation process.[1] Plaintiff contends the Court

---

[1] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner

should reverse the Commissioner's decision or at least remand this case for additional consideration because: (1) the ALJ erred at step two by failing to determine whether various impairments were severe or non-severe impairments; and (2) the ALJ erred at step four by failing to give more weight to the opinion of two doctors who found Plaintiff's RFC precluded him from engaging in competitive work.

**A.     Although the ALJ erred at step two, the error was harmless.**

Plaintiff contends the ALJ erred at step two by failing to determine whether Plaintiff's major depressive disorder, post-traumatic stress disorder ("PTSD"), panic disorder with agoraphobia, and anxiety disorder were severe or non-severe impairments. Plaintiff argues the ALJ's failure to evaluate his mental impairments under the technique set forth in 20 C.F.R. § 404.1520a was reversible error.

At step two of the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment or combination of impairments that lasted or is expected to last for at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A medically determinable impairment is "severe" if it more than minimally affects the claimant's ability to perform basic work activities. The impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . and must be established by medical evidence consisting of signs,

---

determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms . . ." *Martise v. Astrue,* 641 F.3d 909, 923 (8th Cir. 2011). A mental impairment is not severe if it results in no episodes of decompensation and no more than mild limitations in the areas of maintaining concentration, persistence and pace; social functioning; and activities of daily living. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Although severity is not an onerous requirement, it is also not a toothless standard. *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007). The claimant bears the burden of establishing that his impairment is severe. *Id.* at 507.

In the present case, the ALJ omitted from his decision a discussion at step two of whether Plaintiff's major depressive disorder, PTSD, panic disorder with agoraphobia, and anxiety disorder were severe impairments. He also did not discuss the psychiatric review technique form ("PRT") which is required when mental impairments are present. 20 C.F.R. § 404.1520a(a); *Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013). Although the ALJ technically erred at step two by not labeling each of Plaintiff's mental impairments as "non-severe" and failing to discuss the PRT, these are harmless errors because there is no credible evidence of any severe mental impairments on the record. *Cuthrell*, 702 F.3d at 1118.

An ALJ is not required to find a severe impairment simply because a claimant has been diagnosed with depression or some other mental impairment. *See Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011). Rather, the ALJ must evaluate the record evidence as whole to determine whether the mental impairments affects a claimant's ability to work. 20 C.F.R. § 404.1520(c).

Here, the ALJ's discussion of Plaintiff's RFC at step four of the sequential evaluation process lists several reasons that are well-supported by the record for finding that Plaintiff's mental impairments had a minimal effect on his ability to work. The ALJ noted—and Plaintiff

does not dispute—that except for a prescription for Adderall to treat his ADHD, Plaintiff has never received any mental health treatment.  R. at 20.  This indicates his mental impairments were non-severe.  *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007).  Additionally, Plaintiff's allegation of memory problems, including his claim that he could not remember his own daughter's name, is unsupported by any diagnostic testing.  The ALJ also gave detailed reasons for questioning the medical professionals' diagnoses of mental impairments.  R. at 19-20.

Finally, the ALJ found Plaintiff's self-reported symptoms were not credible.  For example, the ALJ noted that Plaintiff's claim of being unable to read was inconsistent with his report that he had enrolled in community college to pursue a nursing degree.  R. at 18.  Similarly, Plaintiff's claim that his panic disorder with agoraphobia and his anxiety disorder were so severe that he could not leave his home was incompatible with his enrolling in community college, travelling to the Philippines, and going scuba diving.  R. at 18-19.

Indeed, there is no credible evidence on the record that Plaintiff's mental impairments are severe.  *Johnston v.* Apfel, 210 F.3d 870, 874-75 (8th Cir. 2000) (holding that inconsistencies between record evidence and claimant's subjective allegations of disabling limitations supported ALJ's finding a non-severe impairment).  Thus, the ALJ's failure to discuss Plaintiff's mental impairments at step two or the PRT was a mere deficiency in opinion writing technique which does not require remand.  *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008).

**B.      The ALJ properly weighed the conflicting medical opinions concerning Plaintiff's RFC.**

Plaintiff also contends the ALJ erred at step four of the sequential evaluation process by discounting the opinions of Plaintiff's treating physician, Dr. Ruel T. Miciano, M.D., and an independent examining psychologist, Dr. Holy Chastain, Psy. D.  If the ALJ had given more

weight to their opinions, he would have found Plaintiff unable to engage in competitive work. Plaintiff contends the ALJ erred by giving too much weight to the opinion of the medical expert, Dr. Gerald F. Winkler, M.D., who testified at the hearing and criticized their opinions.

The Court finds no merit to either argument. Where the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). Although a treating physician's opinion concerning an applicant's functional limitations is generally entitled to substantial weight, "[a] treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (internal quotation marks omitted). The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record. 20 C.F.R § 404.1527(c)(2). An ALJ cannot give controlling weight to the doctor's opinion if it is not supported by medically acceptable laboratory and diagnostic techniques or is inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010).

If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002). Once the ALJ has decided how much weight to give a medical opinion, the court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

In this case, the Court cannot say the ALJ erred in discounting either doctor's opinion. As a threshold matter, Dr. Miciano formulated his opinions on the basis of a doctor-patient relationship with Plaintiff that was not yet six weeks old. R. at 376-81, 382-84. This relationship was too brief for Dr. Miciano's opinion to be given the weight of a treating

physician. *See* 20 C.F.R. § 404.1527(c)(1) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight that we would give it if it were from a non-treating source."); *Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (holding a treating doctor's opinion was not entitled to controlling weight where the doctor had only met with the patient on three prior occasions). As the ALJ noted, Dr. Miciano provided no mental health treatment to Plaintiff before completing his mental RFC assessment. R. at 20. Moreover, Dr. Miciano, a specialist in family medicine,[2] is not trained in any medical specialty that qualifies his opinion for enhanced weight as to Plaintiff's neurological, orthopedic, and mental impairments.

Also, Dr. Miciano's minimal treatment records do not support his functional assessments of Plaintiff's impairments. During his initial appointment with Plaintiff, on January 5, 2010, Dr. Miciano noted Plaintiff had lower back pain secondary to a motor vehicle accident, poor peripheral vision due to an orbital fracture, ADHD, and congenital hearing loss. R. at 309-11. Based on this single encounter, which relied heavily on Plaintiff's self-reported limitations, Dr. Miciano opined Plaintiff's injuries prevented him from working. R. at 311.

Subsequent treatments do not support his opinion either. On February 5, 2010, Dr. Miciano saw Plaintiff for a spider bite, R. at 307, and on February 9, 2010, he gave Plaintiff an "excuse for work" so he could participate in a 17-day study at Quintiles, a pharmaceutical testing organization. R. at 305. Dr. Miciano subsequently saw Plaintiff on November 10, 2010, December 10, 2010, and January 14, 2011. R. at 386-89. At these appointments, he refilled Plaintiff's prescription for Oxycontin and administered an MMR (measles, mumps, and rubella) injection. Such a history of minimal and/or conservative care is inconsistent with Plaintiff's

---

[2] The record is silent as to Dr. Miciano's specialty, but the Commissioner reports, and Plaintiff does not deny, that it is family medicine.

claim that his medical impairments are so severe he is unable to work. *See Loving v. Dep't. of Health & Human Servs.*, 16 F.3d 967, 970 (8th Cir. 1994).

Similarly, the ALJ did not err in discounting Dr. Chastain's opinion. Dr. Chastain derived her opinion from a single interview which relied heavily on Plaintiff's self-reported complaints. Based on this interview, Dr. Chastain opined that Plaintiff had a Global Assessment of Functioning ("GAF")[3] score of 40, which indicates an impairment in reality testing, communication, or major impairment in several areas.

This finding is inconsistent with the credible medical evidence of record. For example, Dr. C. Kenneth Bowles, Ph.D., the State Agency psychological consultant who reviewed Plaintiff's claim on April 15, 2010, and concluded Plaintiff suffered from only "mild" restriction in his activities of daily living and in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence, or pace, and that Plaintiff experienced no repeated episodes of decompensation, each of extended duration. R. at 325. As the ALJ noted, Dr. Bowles criticized Dr. Chastain's assessment because her two-page report did not show she inquired into his activities of daily living, and she appeared to have based her impressions on Plaintiff's comments without including "a full range of symptoms as required by DSM for these diagnoses." R. 19, 327-28. Dr. Bowles concluded Plaintiff appeared to be "able to understand and remember at least simple instructions;" sustain concentration, persistence, and pace with at least simple tasks; as well as "able to adapt and interact socially in a non-complex work environment with limited public contact." R. at 331. The ALJ did not err in giving less weight to Dr. Chastain's opinion, because where a GAF rating does not reflect a claimant's actual

---

[3] GAF scores are a reflection of the examining clinician's personal assessment of an individual's social, occupational, and psychological functioning. *Mortensen v. Astrue*, No. 10-4975 (JRT/JJG), 2011 WL 7478305, at *2 n.4 (D. Minn. Sept. 30, 2011) (citing *Diagnostic and Statistical Manual of Mental Disorders* 32-33 (4th ed., Am. Psychiatric Ass'n 1994)).

abilities as demonstrated by the evidence, the ALJ does not err in discounting the source of the opinion. *Hudson ex rel. Jones v. Barnhart*, 345 F.3d 661, 666-67 (8th Cir. 2003).

Finally, the ALJ did not err by giving considerable weight to the opinion of the impartial medical expert, Dr. Winkler, a board-certified neurologist who testified at the hearing. R. at 41. Based on his review of the entire file, Dr. Winkler made several valid observations that the ALJ did not err in embracing. Among these were that Plaintiff's use of Oxycontin was contrary to acceptable medical practice, R at 19, 45-46, 51; and that Plaintiff's enrolling in nursing school conflicted with his alleged limitations on being able to lift and carry, climb stairs, remember his daughter's name, and need to be able to lift, recline or elevate his feet every two to three hours. R. at 20, 46, 47, 49.

Accordingly, the ALJ did not err in weighing the conflicting medical opinions concerning Plaintiff's RFC.

## Conclusion

For the reasons discussed above, the Court finds the Commissioner's determination is supported by substantial evidence on the record. The Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:     January 28 2014          /s/ Greg Kays
                                   GREG KAYS, CHIEF JUDGE
                                   UNITED STATES DISTRICT COURT